In re Deborah A. BAGLEY, Debtor,

CONNECTICUT STUDENT LOAN FOUNDATION, INC., Plaintiff,

v.

Deborah A. BAGLEY, Defendant.

Bankruptcy No. 80–0004.

United States Bankruptcy Court, D. Arizona.

May 13, 1980.

Clague Van Slyke, Tucson, Ariz., for plaintiff.

Herbert E. Lahr, Tucson, Ariz., for defendant/debtor.

## MEMORANDUM OPINION

WILLIAM A. SCANLAND, Bankruptcy Judge.

Plaintiff, Connecticut Student Loan Foundation, Inc., filed an action to determine the dischargeability of a debt due it from the defendant, Deborah A. Bagley, under Section 523(a)(8) of the Bankruptcy Reform Act (11 U.S.C. § 523). This matter came on for trial on April 29, 1980, at which both written and oral evidence were introduced. Plaintiff was represented by its attorney, Clague Van Slyke, and defendant was represented by her attorney, Herbert E. Lahr. The defendant testified that she was a non-working wife of Carson D. Bagley who is a private stationed at Ft. Huachuca, Arizona. She testified that his gross monthly income is $822.12, from which the United States Army deducts rent, $120.60; life insurance, $20.50; soldiers' group life insurance, $3.00; Old Soldiers' Home, $.50; taxes, social security, $113.52, for a total deduction of $258.12, leaving a net monthly income of $564.00. Plaintiff's exhibit 5 was admitted into evidence which set forth her monthly expenses totaling $619.67, including $100.00 monthly attorney's fees. She testified that she had terminated her previous employment sometime in May 1979 because of her pregnancy.

Subsequent to the filing of the petition in bankruptcy by both Mr. and Mrs. Bagley, a child was born with severe respiratory problems. She apparently was committed to the University of Arizona Health Center Hospital a week or so prior to the birth of the child and was released a few days thereafter, but the baby was kept in intensive care for a considerable period of time because of the respiratory problem. She stated that she had received billings from the University of Arizona Health Center Hospital of approximately $5,000.00 and anticipated receiving additional billings in the amount of $10,000.00. She based her testimony on the hospital expenses incurred in the treatment of a child previously born with the same type of respiratory ailment who subsequently died. She and her husband have a United States Health Insurance Policy which she stated would pay off about 70 per cent of the total indebtedness of $15,000.00, leaving a balance for which she and her husband would be liable of between $4,100.00 and $4,500.00.

The plaintiff's complaint asks that the discharge be denied as to its debt of $2,206.52 under Section 523(a)(8) of the Bankruptcy Code, effective October 1, 1979. While having no bearing on the determination of the dischargeability of this debt, it should be noted that this debt was a premarital debt incurred by defendant prior to her marriage to Carson D. Bagley. Section 523(a)(8), Exceptions to discharge, reads as

follows: "to a governmental unit, or a non-profit institution of higher education, for an educational loan, unless—(A) such loan first became due before five years before the date of the filing of the petition; or (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;".

Here the loan first became due within the five-year period before the date of the filing of the petition. The only issue before the Court is whether excepting the debt from discharge will impose an undue hardship on the debtor and the debtor's dependents. A review of the legislative history of this particular paragraph of the Bankruptcy Code does not answer the question as to what is "undue hardship." See 2 Appendix, Collier (15th ed.) pp. 132–162.

Counsel for plaintiff, in his pretrial Memorandum of Law (pp. 4–12), looks to the element of undue hardship as used under the former 20 U.S.C. § 1087–3 (Higher Education Act of 1965) where the test for a release from a student loan was whether "payment from future income or other wealth will impose an undue hardship on the Debtor or his dependents." A review of the cases cited by plaintiff in the Memorandum of Law is not determinative of the issue before the Court. Plaintiff cites *State of Ohio v. Bruce Kirch*, 18 Collier Bankruptcy Cases 577 (S.D.Ohio, 1978); and *Pennsylvania Higher Education Assistance Agency v. Sylvester Townsend*, 19 Collier Bankruptcy Cases 583 (E.D.Penn.1978). In each of these cases the bankrupt was employed and had no unusual or emergency liabilities such as defendant Bagley has in this situation. In each of these cases the court found that the bankrupt could make monthly payments and repay his school loan. In *Townsend*, supra, the bankrupt was making a church contribution of $75.00 to $100.00 per month and $35.00 a month to a student club. The court found he could cut down on these voluntary contributions and make a monthly payment. In *Kirch* the debtor was earning $5.62 an hour, had monthly living expenditures of less than this amount, had an anticipation of higher earnings in the fu-

ture, had made no efforts to get a job where his schooling would be compensated, and had no dependents and no medical problems. These cases are clearly distinguishable from the case before the Court.

In *New York State Higher Educational Services Corporation v. Moore*, 18 Collier Bankruptcy Cases 646 (W.D.N.Y.1978), also cited by plaintiff, the bankrupt was employed as a substitute teacher and had monthly expenses of $333.00. In *Moore* the court argued that "undue" means "inappropriate or unsuitable, not extraordinary" and that "hardship" means "hard to bear." While this Court agrees that that is part of the definition of "undue", a review of *Webster's New World Dictionary*, College Edition, Copyright 1968, shows that the word "undue" means "improper; not just, legal, or equitable; excessive; unreasonable; immoderate" and that the word "hardship" also means the "hard circumstances of life." Any of the Webster definitions could have been used to hold the debt in the *Moore* case dischargeable. The Court believes that these definitions apply in determining undue hardship in the case at bar.

The fourth case cited by plaintiff is *Wisconsin Higher Educational Aids Board v. MacPherson*, 19 Collier Bankruptcy Cases 178 (W.D.Wis.1978). In this case bankrupt was divorced, supporting two minor children, her ex-husband was not paying alimony to her or child support, her son had just had a serious brain operation, and the excess of her income over expenses was $14.50. The court held that ordering payment of $25.00 per month would not create an undue hardship, citing the *Kirch* case, supra. I do not believe that the *MacPherson* case accurately reflects the intention of the Congress in providing for the dischargeability of a student loan for undue hardship.

This Court has in the past relied on *In re Matthews*, CCH Bankruptcy Law Reports, Vol. 3, ¶ 67,049, p. 77,1010 (D.C.Conn.1979). The bankruptcy judge in this case stated that in determining undue hardship the court must consider: (1) if the debtor has any accumulated wealth or any reasonable

prospects of acquiring any, (2) what the debtor's chances are of obtaining and retaining steady employment and what income can be expected, (3) the amount the debtor will need to maintain a minimal standard of living, and (4) if there would be anything left from the estimated income to allow the bankrupt to make some payments on the loan without reducing what is needed to live on. In the instant case, the debtor testified she had not made any monthly payments to her attorney and did not anticipate that she would do so in the future. A review of the monthly expenditures of the debtor and her husband show that they are living at a near welfare level and that they are unable to pay their monthly expenses as they accrue, much less pay the University of Arizona Health Center Hospital the moneys which they are obligated to pay as post-petition debts. These debts were all incurred after the Bagleys filed their petition for relief under Chapter 7 on October 1, 1979.

The debtor further testified that the new baby could receive normal pediatric care from the base hospital at Ft. Huachuca, but that if any extraordinary problems developed with the child's breathing she would return the child immediately to this hospital. This undoubtedly would mean additional expense for the debtor and her husband if this event occurs.

Debtor testified she did not anticipate going back to work until the child could safely be left with a babysitter, which again would result in an unanticipated or unbudgeted expense. She testified that they had no wealth and no anticipation of any inheritance, and an examination of the schedules filed by her and her husband in this case shows this to be true. They own only household furnishings, clothing, and a 1965 Dodge.

After a thorough review of the law and the evidence in this matter, this Court finds that excepting from discharge the debt due to the plaintiff in this matter will be imposing an undue hardship on the debtor and the debtor's dependents. The debt, therefore, is discharged.

This Memorandum Opinion shall serve as Findings of Fact, Conclusions of Law as provided for by Section 752 of the Bankruptcy Rules of Procedure. Defendant's attorney IS ORDERED to prepare an appropriate form of order.