In re Paul George CONARD, Debtor.

UNITED STATES of America, Plaintiff,

v.

Paul George CONARD, Defendant.

Bankruptcy No. 37802235.
A.P. No. 3800227.

United States Bankruptcy Court,
W. D. Kentucky.

Sept. 12, 1980.

Mikell T. Grafton, Asst. U. S. Atty., Louisville, Ky., for United States.

David A. McCullough, Louisville, Ky., for Conard.

1. 5 BCD at 425.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

For the first time under the new Bankruptcy Code we are asked to consider "undue hardship" as an affirmative defense in a suit seeking to have a federally–guaranteed student loan excepted from discharge.

Section 523(a) of the Code provides that a bankruptcy discharge will not extend:

(8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless . . .

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor.

Before examining the facts of the case before us, we will briefly review current decisions on the point. Even a cursory reading of them reveals the obvious–that each undue hardship case ultimately rests upon its own facts.

No undue hardship was found in *In re Kohn*, 5 BCD 419 (S.D.N.Y.1979), in which an unmarried 48–year–old man with no dependents, with income of $776 and expenses of $600 a month, on notice of impending unemployment, was required to repay a student loan. Judge Babitt, unmoved by the anticipated joblessness, expressed the opinion, with which we agree, that "if temporary unemployment were the basis of discharge, bankrupts would be encouraged to come here unemployed, seek an undue hardship discharge and then seek gainful employment".[1]

Undue hardship was held to entitle the petitioner to a discharge of student debt in *In re Johnson*, 5 BCD 532 (E.D.Pa.1979). The bankrupt was a young woman who was pregnant, being divorced, had recently been seriously injured in an automobile accident, and had been asked by her parents to move out of their home. She planned to rent a room, give birth to the child, and live on welfare.

With methodical precision, the *Johnson* court analyzed the elements to be considered in undue hardship cases.[2] Without attempting to repeat that court's exhaustive treatment of the subject, we note that among the essential elements are present and predictable future income, both earned and unearned; marketable job skills and level of education attained; employment record and current employment status; health; sex; access to transportation, and number and age of dependents.

A young unmarried woman, whose disposable income after expenses was $10 per month, and whose two–year–old son had a heart condition, was excused from repayment of a student loan in *In re Sousek*, 5 BCD 967 (E.D.Wis.1979). And undue hardship was found to exist in the case of a policeman whose expenses in supporting his wife and four children exceeded his monthly income by $240. *In re Fonzo*, 1 B.R. 722, 5 BCD 1174 (Bkrtcy.S.D.N.Y.1979).

The court in *In re Kammerud*, 6 BCD 370 (E.D.Ohio 1980), found "some hardship", but less than "undue", where a married couple, each of whom had substantial postgraduate education, had recently completed a Chapter XIII plan, thus freeing up $300 per month for application to the student debt.

A wife of an Army private living at "near welfare level",[3] confronted with as much as $4,500 in uninsured medical expenses for treatment of her newborn infant's respiratory disorder, qualified for discharge in *In re Bagley*, 4 B.R. 248, 6 BCD 404 (Bkrtcy.D.Ariz.1980). In a rather simplistic recitation of synonyms and definitions from Webster's Collegiate, the court found that Mrs. Bagley's circumstance was, indeed, both "undue" and a "hardship" by dictionary measure.

*     *     *     *     *     *

Paul Conard, 31, a substitute teacher for the Jefferson County Board of Education, was terminated as a full–time history teacher in April, 1979. His gross income for 1979 was $6,000; for 1978; $9,941. When called as a substitute, he is paid $33 per day.

Conard filed for relief under the Bankruptcy Code in October, 1979, listing $37,354 in liabilities and $25 in assets.

His obligations consisted of a loan executed in connection with a business venture, Double Dip Ice Cream; signature loans; revolving credit card accounts, and a student loan of $4,125.79.

The United States initiated this action to have Conard's student loan obligation excepted from his discharge in bankruptcy. Conard raised the affirmative defense under § 523(a)(8)(B) of the Code that to enforce repayment of the debt would impose an undue hardship.

*     *     *     *     *     *

The following facts were developed at the trial, at which Conard was the only witness:

Upon being discharged from military service, Conard used the G. I. Bill of Rights to obtain a college education. His thirst for knowledge led him through five different colleges.

At some point in his academic travels the wellspring of benefits from the G. I. Bill was depleted, and Conard applied for and obtained a series of three federally–guaranteed, long–term, low–interest loans with which he could complete his collegiate journey. He obtained a bachelor's degree in education at Western Kentucky University, and there studied toward, but did not obtain, a postgraduate degree.

Conard, unmarried with no dependents, lives at the home of his 75–year–old mother. Having no car of his own, he drives her van.

Accurately describing himself as "overweight", Conard testified that his physical appearance "turns off a lot of people", including potential employers. The weight problem–and it is a severe one–has not been diagnosed as having any medical origin. Conard attributes it to "a different metabolic rate".

---

2.   5 BCD at 536–540.

3.   4 B.R. at 251, 6 BCD at 405.

Conard has unsuccessfully sought sales jobs. He has *not* applied for employment at any private schools in Jefferson County, nor has he applied at any schools, public or private, in surrounding counties. He apparently is content to await recall by the county board of education, and he ranks low on the recall roster.

With his elderly mother as a guarantor, Conard obtained a $5,000 loan from Union Trust Bank this summer, some months after filing bankruptcy. Curiously, he is using the loan proceeds only to retire as they become due the $150 monthly payments on that same loan.

\* \* \* \* \* \*

This claim of undue hardship rests upon two asserted facts: (1) Conard must support and provide for his elderly mother, and (2) he is unable to obtain employment because of his physical appearance.

Upon the first point, we have some question as to who is supporting whom. The mother, who gave birth to this healthy young man while in her 44th year, and who fancies a mode of transportation generally associated with drivers two generations her junior, may be a vital woman indeed. Although the record does not indicate the extent of her income or financial substance, it is at least clear that Union Trust Bank would not extend credit to the son without the mother's hand being put to the note.

Upon the second point we must observe, with neither cyncicism nor cruelty, that corpulence is a condition which may swiftly diminish with continued impecuniosity.

This unemployed former president of the Double Dip Ice Cream Company, having double–dipped the available federal subsidies to obtain a superior education, should consider some alternatives. Enlightened self–interest would seem to suggest the virtue of a vigorous and energetic search for a proper workshop in which to use those intellectual tools which have been well honed at federal expense. Productivity is preferable to living off the substance of the land. In order to stimulate some reflection upon such heretical theories of individual enterprise, it is hereby

ORDERED, that the indebtedness of Paul George Conard to the Department of Health, Education and Welfare, United States of America, is not dischargeable in bankruptcy. This is a final order. Judgment shall be entered accordingly.