McMILLIAN, Circuit Judge.
 

 South Dakota Student Loan Assistance Corp. (hereinafter the creditor) appeals
 
 [1]
 
 from a final judgment entered in the Bankruptcy Court for the District of South Dakota granting the complaint of Gladys Marie Andrews (hereinafter the debtor) requesting a hardship discharge of a federally insured student loan pursuant to 11 U.S.C. § 523(a)(8)(B).
 
 [2]
 

 In
 
 re
 
 Andrews,
 
 No. 180-00022 (Bankr.D.S.D. Aug. 1, 1980). For reversal the creditor argues that the bankruptcy court abused its discretion in granting the debtor a hardship discharge. For
 
 *703
 
 the reasons discussed below, we vacate the judgment of the bankruptcy court and remand the case with directions.
 

 Most of the facts are undisputed. In August, 1978, the debtor obtained a federally insured student loan in the amount of $2,500 at 7% annual interest from the Farmers and Merchants Bank in Aberdeen, South Dakota. Thereafter the creditor, a non-profit corporation engaged in the handling of student loans, purchased the loan from the Farmers and Merchants Bank. The debtor obtained the student loan in order to attend a local vocational school and study nursing. The debtor successfully completed two quarters of study when she learned that she had Hodgkin’s Disease, a form of lymphatic cancer. The debtor received medical treatment at the Emory University Medical Center. Although her disease is now in remission, there is no assurance that she will not suffer a relapse.
 
 Id.
 
 at 2.
 

 At the time of the discharge proceedings the debtor was thirty-six years old, divorced, and received no alimony. At the hearing the debtor testified that she had no support obligations or dependents. She is currently employed as the director of the YWCA Women’s Place, a shelter for victims of domestic violence in Aberdeen. When she began work in July, 1979, she was paid $3.20 per hour under a state Public Service Employment grant; however, since March, 1980, the Women’s Place has been funded under a two-year grant from the Bush Foundation of St. Paul, Minnesota, under which the debtor’s salary as director is $10,-000 per year. Although part of her job as director includes finding new private sponsors and government funding for the Women’s Place, the bankruptcy court noted that the debtor was not assured steady employment after the expiration of the Bush Foundation grant.
 
 Id.
 
 The bankruptcy court further noted that the debtor is covered by social security and that her total assets are worth substantially less than the outstanding indebtedness on the student loan. The bankruptcy court did not, however, include in its decision that, according to the debtor’s testimony at the hearing, she was covered by the Women’s Place group health insurance plan and that the plan did not contain any reservation with respect to her disease.
 

 Under the creditor’s repayment schedule the debtor was to repay the loan at the rate of $30 per month. The debtor has not made any payments. In April, 1980, she filed this petition for bankruptcy. The bankruptcy court granted the hardship discharge in August, 1980, and this appeal followed.
 

 For reversal the creditor argues that the bankruptcy court abused its discretion in granting the debtor a hardship discharge pursuant to 11 U.S.C. § 523(a)(8)(B). The creditor specifically argues that the bankruptcy court erroneously speculated about the possibility that the debtor would suffer a relapse and failed to include a finding of fact that the debtor is covered by group health insurance. Under the circumstances we do not reach the creditor’s specific objections because we find that the bankruptcy court made its determination of undue hardship on the basis of an incomplete record. In particular, we find that, before making a determination of undue hardship, the bankruptcy court should examine the debtor’s necessary living expenses.
 

 The issue of the dischargeability of student loans on the ground of undue hardship
 
 [3]
 
 has produced much case law at the bankruptcy court level.
 
 E. g., In re Pierre,
 
 12 B.R. 693 (Bkrtcy.S.D.Fla.1981);
 
 In re Wegfehrt,
 
 10 B.R. 826 (Bkrtcy.N.D.Ohio 1981);
 
 In re Siebert,
 
 10 B.R. 704 (Bkrtcy.S. D.Ohio 1981);
 
 In re Lawson,
 
 10 B.R. 477 (Bkrtcy.E.D.Tenn.1981);
 
 In re Hemmen,
 
 7 B.R. 63 (Bkrtcy.N.D.Ala.1980);
 
 In re Diaz,
 
 5 B.R. 253 (Bkrtcy.W.D.N.Y.1980);
 
 In re Bagley,
 
 4 B.R. 248 (Bkrtcy.D.Ariz.1980);
 
 In re Kammerud,
 
 6 B.C.D. 370 (Bkrtcy.S.D.Ohio 1980);
 
 In re Matthews,
 
 3 Bankr.L.Rep. (CCH) ¶ 67,049 (Bkrtcy.D.Conn.1979);
 
 In re
 
 
 *704
 

 MacPherson,
 
 4 B.C.D. 950 (Bkrtcy.W.D.Wis. 1978);
 
 In re Kirch,
 
 4 B.C.D. 680 (Bkrtcy.S. D.Ohio 1978).
 
 See generally
 
 3 Collier on Bankruptcy ¶ 523.18 (15th ed. 1980); Ahart,
 
 Discharging Student Loans in Bankruptcy,
 
 52 Am.Bankr.L.J. 201 (1978).
 
 See also
 
 Comm’n on the Bankruptcy Laws of the United States, Report, H.R.Doc. No. 137, 93d Cong., 1st Sess. (1973); H.R.Rep.No. 95-595, 95th Cong., 1st Sess. (1977),
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 5787.
 

 Student loan obligations may be discharged in bankruptcy if the debtor shows that repayment of the loan would impose an “undue hardship” on the debt- or and his/her dependents. “Undue hardship” is not defined in the Bankruptcy Code. The Commission on the Bankruptcy Laws of the United States recommended to Congress that student loans “should not as a matter of policy be dis-chargeable before [the debtor] has demonstrated that for any reason he [or she] is unable to earn sufficient income to maintain himself [or herself] and his [or her] dependents and to repay the educational debt.”
 

 In order to determine whether the non-dischargeability of the student loan would impose an “undue hardship” on the debtor, the Commission stated that:
 

 . . . the rate and amount of [the debtor’s] future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and [the debtor’s] dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.
 

 In re Wegfehrt, supra,
 
 10 B.R. at 830 (footnotes omitted),
 
 citing
 
 Comm’n on the Bankruptcy Laws of the United States, Report,
 
 supra,
 
 Pt. II, 140 n.15, 140-41 n.17. The bankruptcy court in
 
 Wegfehrt
 
 concluded that
 

 each bankruptcy case involving a student loan must be examined on the facts and circumstances surrounding that particular bankruptcy for the Court to make a determination as to “undue hardship.” The bankruptcy court must determine whether there would be anything left from the debtor’s estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living.
 

 10 B.R. at 830.
 
 Accord, In re Bagley, supra,
 
 4 B.R. at 250-51.
 
 [4]
 

 Here, the record contains information about the debtor’s present employment and the lack of any accumulated wealth or reasonable prospects for acquiring any wealth or other income. The present record does not, however, contain any information about the debtor’s reasonable living expenses and whether the debtor would be able to repay her loan at thé rate of $30 per month out of the balance of her estimated income less reasonable living expenses. We therefore vacate the judgment of the bankruptcy court and remand the case for further factfinding.
 

 Further, in our opinion the bankruptcy court properly considered the debt- or’s disease as a factor in the determination
 
 *705
 
 of undue hardship.
 
 See In re Diaz, supra,
 
 5 B.R. 253 (the debtor’s monthly expenses exceeded her income, she suffered from a variety of serious medical problems and needed surgery, one of her four children required dental work and psychiatric care, her ex-husband was confined to a mental clinic);
 
 In re Bagley, supra,
 
 4 B.R. 248 (the debtor and her husband were living at near welfare level, could not meet their monthly expenses as they accrued, and their infant had a serious respiratory complication which had resulted in over $4,000 in hospital bills).
 
 But see In re MacPherson, supra,
 
 4 B.C.D. 950 (the debtor was divorced, did not receive any alimony or child support, was supporting her two children, one child had had serious brain surgery, her monthly income exceeded her expenses by less than $15, no hardship discharge) (arguably monthly payments, even at a reduced rate, would have caused severe hardship under the circumstances).
 
 See also
 
 3 Collier on Bankruptcy,
 
 supra,
 
 ¶ 523.18, at 523-134 & n.6. Serious illness all too often requires expensive treatment and medication. Serious illness may affect an individual’s ability to work. To some extent, as argued by the creditor, the expenses associated with a serious illness may be covered by health insurance. On remand the bankruptcy court should carefully examine the scope of the debtor’s group health insurance coverage. The bankruptcy court should also consider any additional information about the debtor’s present employment status and employment prospects, in particular, whether the Women’s Place will be funded after March 1982 and, if so, at what level.
 

 We express no opinion as to the merits of the debtor’s case for discharge.
 
 [5]
 
 Accordingly, the judgment of the bankruptcy court is vacated and remanded with directions.
 

 [1]
 

 . The parties agreed to appeal directly to this court pursuant to 28 U.S.C. § 1293(b), which provides in part:
 

 Notwithstanding section 1482 of this title, a court of appeals shall have jurisdiction of an appeal .. . from a final judgment, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.
 

 [2]
 

 . § 523. Exceptions to discharge
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution of higher education, unless—
 

 (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor’s dependents ....
 

 [3]
 

 . Student loans may also be discharged if the loans have been due and owing for five years before the filing of the debtor’s petition under 11 U.S.C. § 523(a)(8)(A). .
 
 See In re Williams,
 
 9 B.R. 1004, 1011 (Bkrtcy. E.D.Va. 1981).
 

 [4]
 

 . In
 
 Bagley
 
 the bankruptcy court referred to the undue hardship analysis set forth in
 
 In re Matthews,
 
 3 Bankr.L.Rep. (CCH) ¶ 67,049, at 77,1010 (Bankr.D.Conn. 1979):
 

 The bankruptcy judge in [Matthews] stated that in determining undue hardship the court must consider: (1) if the debtor has any accumulated wealth or any reasonable prospects of acquiring any, (2) what the debtor’s chances are of obtaining and retaining steady employment and what income can be expected, (3) the amount the debtor will need to maintain a minimal standard of living, and (4) if there would be anything left from the estimated income to allow the bankrupt to make some payments on the loan without reducing what is needed to live on.
 

 4 B.R. at 250-51.
 

 [5]
 

 . We recognize that the bankruptcy court’s determination of undue hardship will necessarily involve a certain amount of speculation about the debtor’s financial circumstances. We further recognize that the debtor’s financial circumstances may change in the future. For this reason we recommend that if the bankruptcy court determines that the debtor should not be granted a discharge on the grounds of undue hardship, the bankruptcy court deny such relief without prejudice to the debtor’s again seeking relief under Rules Bankr.Proc. 409(a)(1), 11 U.S.C. Rule 409(a)(1).
 
 E. g., In re Pierre,
 
 12 B.R. 693 (Bkrtcy.S.D.Fla. 1981). We also note that administrative relief may be available to a debtor who has been denied an undue hardship discharge.
 
 See
 
 45 C.F.R. § 177.508 (deferment), .512 (forbearance), .514 (cancellation) (1980).
 

 Court correspondence indicates that the debtor’s attorney is representing her on a
 
 pro bono
 
 basis. We acknowledge this service.