**In the Matter of Garold SPRINGER a/k/a Gerald Springer and Marcella Springer, Debtors.**

**Gerald and Marcella SPRINGER, Plaintiffs,**

**v.**

**HIGHER EDUCATION ASSISTANCE FOUNDATION; First Westside Bank of Omaha, Nebraska; the University of Nebraska, and the United States Government, more particularly, the United States Department of Education, Defendants.**

**Bankruptcy No. BK85–10.**
**Adv. No. A85–116.**

United States Bankruptcy Court,
D. Nebraska.

Nov. 21, 1985.

Vincent Powers, Lincoln, Neb., for debtors.

John Wiltse, Asst. Gen. Counsel, Univ. of Neb., Lincoln, Neb., for Bd. of Regents of the Univ. of Neb.

Richard Garden, Lincoln, Neb., for Higher Educ. Assistance Foundation.

Bernie Glaser, Asst. U.S. Atty., Lincoln, Neb., for the U.S. of America, Dept. of Educ.

## MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

Trial on Plaintiffs/Debtors' complaint praying for a hardship discharge of student loans pursuant to 11 U.S.C. § 523(a)(8)(B)

was held in Lincoln, Nebraska, on November 14, 1985. Vincent Powers of Lincoln, Nebraska, appeared on behalf of the debtors. John Wiltse, Assistant General Counsel, University of Nebraska, appeared on behalf of the Board of Regents of the University of Nebraska. Bernie Glaser, Assistant United States Attorney, appeared on behalf of the United States of America, Department of Education. Richard Garden of Lincoln, Nebraska, appeared on behalf of Higher Education Assistance Foundation.

### Question in Issue

Should this husband and wife who obtained college educations and the opportunity for post-graduate studies through the use of educational loans made, insured or guaranteed by a governmental unit or a non-profit institution be granted a hardship discharge of the debts represented by those loans in a Chapter 7 bankruptcy case?

### Decision

These debtors shall not be granted a hardship discharge pursuant to § 523(a)(8)(B).

### Findings of Fact

The debtors, Gerald and Marcella Springer, are husband and wife who filed a joint petition for relief under 11 U.S.C. Chapter 7 on or about January 4, 1985. All of the debts listed on their schedules are unsecured.

Gerald Springer owes $2,698.70 including interest through October 18, 1985, to the University of Nebraska, for National Direct Student Loan notes. Marcella Springer owes $6,150.98 with interest calculated up to and including October 18, 1985, on National Direct Student Loan promissory notes representing loans received from the University of Nebraska.

The parties also received guaranteed student loans under the Guaranteed Student Loan Program established by the Higher Education Act of 1965. These loans were

obtained from First Westside Bank in Omaha, Nebraska, for educational purposes. All three notes were guaranteed by the Higher Education Assistance Foundation, a non-profit organization. The debtors have defaulted on all three notes and the Foundation has paid First Westside Bank under the terms of its guaranty and the three notes were endorsed and assigned to the Foundation.

Gerald Springer owes $5,773.64 including interest up to and including November 14, 1985, on one of the guaranteed student loan notes. On his second guaranteed student loan note he owes $5,727.15 with interest calculated up to and including November 14, 1985.

Marcella Springer owes $5,764.05 including interest calculated up to and including November 14, 1985, on the guaranteed student loan that she obtained from the First Westside Bank.

The total student loan obligation of Gerald Springer is $14,199.49 plus accruing interest. The total student loan obligation of Marcella Springer is $11,915.03 plus accruing interest.

The parties agreed at the beginning of the trial that the total student loan debt was approximately 90% of the total debt of the parties. In addition; the debtors admitted at the beginning of the trial that the main purpose for filing a Chapter 7 bankruptcy was to obtain the discharge of the student loan debt.

Gerald Springer received a Bachelor of General Studies majoring in Human Services from the University of Nebraska at Omaha in 1980. He received a Master of Science degree, majoring in Urban Education from the University of Nebraska at Omaha in 1983. In 1984 he received a Master of Education from Harvard Graduate School of Education.

Marcella Springer received a certificate from the Beatrice Beauty School in 1956. In 1972 she attended Nettleton Business College and received a certificate for completion of a six-week keypunch course. In 1977 she received a certificate upon completion of a correspondence course in the travel industry from Northwest Schools. She graduated with a Bachelor of General Studies majoring in Sociology from the University of Nebraska at Omaha in 1982. She began working on her Master of Science degree at the University of Nebraska at Omaha and completed 27 hours of credit before leaving school in 1983.

The Springers have two children, twin daughters who were born in May of 1983.

Mr. Springer is a Native American who, although he did not receive formal high school education, did receive a G.E.D. and it is obvious from his demeanor, articulate testimony and academic record, that he is an intelligent well-spoken individual.

He has worked at various jobs throughout his educational program and following the issuance of the various degrees to him has sought employment in his professional field. He has been employed in his field or in related human services positions both during his college and post-graduate years and since his graduation from Harvard.

The problem that Mr. Springer is having concerns his earning ability. The field in which he is educated apparently does not provide a sufficient economic opportunity or salary level for him to be able to provide adequately for his family and pay the student loans that he has incurred.

The evidence is clear that he is not a lazy person. He has applied to governmental and private employers for jobs inside and outside of his professional field. The best job that he has been able to obtain pays $16,000 per year and is located on an Indian reservation in Kansas. He and his family live in Beatrice, Nebraska, and he drives to Kansas on a weekly basis. The position is a federally funded position with its continuing existence totally dependent upon the federal budget and the allocation process. The salary he receives does not include any type of health insurance or other benefits and it does not include housing. Therefore, he is required to take the one family vehicle to drive to Kansas and spend all week in a sleeping room which he pays for out of his salary. In the meantime his

spouse and children stay in Beatrice without transportation in a two-bedroom apartment located within the city limits of Beatrice.

Mrs. Springer has a college degree from the University of Nebraska at Omaha and 27 hours of credit on a Master's Degree Program. The evidence is that she had a difficult pregnancy and childbirth and that she has not been employed since the birth of her children. She has applied to approximately 15 employers within the last several months in an attempt to find employment in the Beatrice, Nebraska, area. She has been unsuccessful in her efforts. The evidence further shows that she is unable to look for employment outside of the Beatrice, Nebraska, area because she does not have transportation since her husband has the vehicle in Kansas during the week.

The evidence is clear that Mr. and Mrs. Springer have no excess disposable income to be used for the payment of the student loans. They do not have luxuries, do not have the opportunity for recreational activities, do not spend their money on anything but the necessities of life.

The evidence further shows they have attempted to obtain employment in areas other than Beatrice, Nebraska. Mr. Springer has applied throughout the State of Nebraska and other states. He has willingly applied for employment as a laborer at a packing plant as well as applying for employment in areas where he could use his academic background.

No payments have been made on any of the student loans by Mr. or Mrs. Springer. The total monthly payment to the Higher Education Assistance Foundation is $190.50. The total monthly payment to the University of Nebraska is $88.30.

Mr. and Mrs. Springer made no contact with either of the lending organizations in any attempt to obtain an extension of the payment schedule or a reduction of the payment amount.

Neither Mr. nor Mrs. Springer has a physical or mental disability which hinders their opportunity or ability to become and continue to be employed. There is no evidence that the debtors' conduct exhibits an intent to escape responsibility for student loans or that the filing is a bad faith filing under the Bankruptcy Code.

The debtors have not made any request of the guaranty organizations that they enter into some type of forebearance agreement such as a temporary cessation of payments or an extension of time for making the payments due to their personal problems or personal financial situation.

### Conclusions of Law

The real issue here is whether or not the requirement of repayment of a student loan where there is currently no available disposable income is "undue hardship" under § 523(a) of the Bankruptcy Code.

The general policy of the Bankruptcy Code is that student loans shall not be dischargeable. Section 523(a)(8). There are two exceptions to the rule, one being if the loan first became due five years prior to the date of filing of the petition and the second exception being the "undue hardship" exception.

There is no mechanical formula which the Court may invoke in determining whether or not the requirement of repayment of a student loan will put an undue hardship on the debtor. The Court is required to examine all of the facts and circumstances surrounding the particular bankruptcy and determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on the student loan. *Andrews v. South Dakota Student Loan Assistance Corporation,* 661 F.2d 702 at 704 (8th Cir.1981). The *Andrews* case cites a number of authorities for the proposition that the determination of undue hardship is a factual one to be determined only after evaluating the individual debtor and the individual debtor's present and future circumstances.

If this Court were only to examine the debtor's current circumstances and financial condition, it would be a simple matter

to decide that it would impose an undue hardship on the debtors to require them to repay their student loans. From the evidence that was presented in trial, it was clear that the debtors do not enjoy a high standard of living, are frequently unable to make their current minimum living expenses from their monthly net income. To impose upon them the requirement that they also allocate a portion of their net income to the repayment of the student loans would be and is at the present time unreasonable.

■ However, the policy is clear that student loans in a Chapter 7 bankruptcy are not dischargeable except in extraordinary circumstances. In this case we have one debtor who has a Master's Degree from the University of Nebraska at Omaha and another Master's Degree from Harvard University. The other debtor has an undergraduate degree from the University of Nebraska at Omaha and many hours of credit on a Master's Degree. They are currently in financial stress. Part of that stress is due to the birth of twin daughters and the unexpected necessary expenses that follow such a usually happy occurrence. Another temporary circumstance that adds to the stress is Mr. Springer's inability to obtain employment that pays more than $15,000 or $16,000 per year and his inability to keep such employment on a regular and consistent basis. The evidence shows that he has had many jobs over many years but has not had a long-term experience with any employer.

Another cause of the financial stress is the inability of Mrs. Springer to obtain employment. This is partly due to her desire to remain home and care for the twins. It is also due to her inability to transport herself to employment because the vehicle which they own is used by the husband.

If this Court were required only to look at the current financial circumstances of a debtor who had incurred student loans, all student loans would be dischargeable. It is frequently the case that when a recent graduate obtains his or her first employ-ment, the student loans and other financial obligations that have been incurred prior to receiving the employment offer are significant. It is a struggle to make the payments on a regular basis. However, this Court believes that one of the reasons for obtaining a college education and perhaps a reason for obtaining a graduate education is to improve the financial condition of the individual over the years. This is exactly what Mr. Springer claimed was his reason for obtaining his Harvard degree. He hoped and assumed that obtaining a degree from a major institution in the United States would make him more marketable and enable him after some period of time to obtain a higher income than he could receive with his undergraduate and Master's Degree from a local university. The evidence presented shows that Mr. Springer has been unable to obtain employment which will pay him more than $15,000 or $16,000 per year. The evidence also shows that Mrs. Springer has been unable to obtain employment recently. The debtors apparently desire that the Court speculate on what the future of their employment possibility is. If the Court is required to speculate, this Court believes that within a couple of years Mrs. Springer will no longer have the absolute necessity of staying home with her children and with her degree and continued search for employment she will find employment. It is further this Court's speculation that Mr. Springer, once he accomplishes a long-term employment relationship with either his current employer or some other employer will be able to earn an amount of money which will justify the expense of the various college and post-graduate degrees that he has received.

This decision, however, is not based upon speculation. Neither the debtors nor the Court can predict the future employment opportunities of the parties. However, both debtors have worked in the past. Both debtors have valuable experience and academic degrees. Both debtors are physically and mentally able to work. Requiring that they pay some or all of their student loans will impose a hardship upon them.

Considering all of the facts and circumstances surrounding this case, this Court does not believe that it is an undue hardship. If the circumstances change, the *Andrews* case cited above provides that the debtors can always ask for relief in the future. In addition, there is a possibility of a discharge of these same student loans under Chapter 13 of the Bankruptcy Code. The policy and standards of Chapter 13 are somewhat different than those of Chapter 7 and under the right factual circumstances the debtors may obtain the relief under that Chapter that they are denied under Chapter 7. In conclusion, it is the opinion of the Court that the student loan debts of these debtors are not dischargeable under § 523(a)(8)(B).

Judgment shall be entered accordingly.