RILEY, Circuit Judge,
dissenting.
This court’s precedents allow a bankruptcy court, when determining whether declining to discharge a student loan constitutes an undue hardship on the debtor, to examine the totality of circumstances affecting a debtor’s reasonable future earning power compared to her living expenses. In re Long, 322 F.3d 549, 554-55 (8th Cir.2003); In re Andrews, 661 F.2d 702, 704 (8th Cir.1981). These circumstances may include a debtor’s serious illness. Andrews, 661 F.2d at 704-05.
Reynolds’s mental illness could be considered such a circumstance in two possible ways. First, her mental illness may make the mere condition of being in debt severely stressful, thus creating an undue hardship. Or, her mental illness could reduce her reasonably reliable future financial resources (by limiting her job prospects both in and out of the legal profession) and potentially increase her expenses (through medical bills and the like), thus creating an undue hardship. See id. at 705. The problem for Reynolds, and the problem with the majority’s opinion, is the first method of considering Reynolds’s mental illness is not permitted under the Bankruptcy Code and this court’s precedent, and the second method is not supported by the record before the bankruptcy court.
The first possible method of considering Reynolds’s mental illness as a circumstance affecting her reasonable future earning power compared to her living expenses-that her mental illness makes the mere condition of being in debt severely stressful, thus creating an undue hardship-is unsupported by this circuit’s caselaw interpreting the Bankruptcy Code. When this court has considered serious illness as a factor in the determination of undue hardship, we have done so only in terms of how that illness affects a debtor’s potential income and expenses; we have never asked whether the condition of having a debt itself constitutes an undue hardship. See id. at 704-05.
The debtor in Andrews suffered from Hodgkin’s Disease, a form of lymphatic cancer, although the disease was in remission at the time of her trial. Id. at 703. Having cancer surely is stressful, whether in remission or not. The prospect of a large student loan hanging over one’s head only could add to that stress. But the Andrews court never asked whether the stress from being in debt could affect the debtor’s state of health and thus was a circumstance contributing to undue hardship. The court discussed the disease only *537 in terms of its effects on the debtor’s income and expenses:
Serious illness all too often requires expensive treatment and medication. Serious illness may affect an individual’s ability to work. To some extent, as argued by the creditor, the expenses associated with a serious illness may be covered by health insurance. On remand the bankruptcy court should carefully examine the scope of the debtor’s group health insurance coverage. The bankruptcy court should also consider any additional information about the debtor’s present employment status and employment prospects.
Id. at 705.
To view a serious illness other than through its effect on income and expenses borders on illogic circularity. The majority opinion makes this very mistake: it concludes having an unpaid debt contributes to Reynolds’s mental illness, and mental illness contributes to the inability to repay the debt (which inability, of course, worsens the mental illness, and so on). Such an analysis grants double treatment to a debtor’s illness, which is at odds with the “fairness and equity” required by the totality-of-the-circumstances test. Long, 322 F.3d at 554. In asking whether illness itself is an undue hardship, the majority changes this circuit’s law-a change I find unwarranted in either law or policy.
Regarding the second possible method of considering Reynolds’s mental illness, even assuming the bankruptcy court’s findings on Reynolds’s income, expenses, and mental illness were substantially supported in the record, those findings do not support a conclusion Reynolds’s mental illness makes her reasonable future financial resources insufficient to cover payment of her student loan debt, while still allowing for a minimal standard of living. See id. at 555. The record before the bankruptcy court is clear: while Reynolds’s mental illness undoubtedly precludes her ability to enter the legal profession, as either a practicing attorney, paralegal, or legal secretary, Reynolds’s psychiatric expert Dr. Robert Jones reported Reynolds can work in a low level clerical or administrative capacity, like the secretary-receptionist position she held at the date of her trial. Relying on this report, the bankruptcy court stated, “As a practical matter, for the indefinite future, she will remain at the level of employment, responsibility, and compensation that she has had since she took her first ‘permanent’ position with the St. Paul Foundation.” In re Reynolds, 303 B.R. 823, 832 (Bankr.D.Minn.2004).
Reynolds’s compensation, when combined with her husband’s compensation from his employment, amounts to $3300 per month. Id. at 829. Reynolds’s monthly household expenses, even after adding a $100 “cushion” for “[v]arious aspects of [her] medical condition,” amount to $2600.[9] Id. at 834. Thus, accounting for the effects of Reynolds’s mental illness on both her income and expenses, Reynolds still has sufficient surplus ($700 per month) to repay her student loans ($502.49 per month on an extended 30-year repayment plan) with an extra safety net of nearly $200 per month with which to maintain or supplement her current standard of living.[10] Id. at 835. Given these facts, our *538 circuit precedent plainly states a student loan debt “should not be discharged.” Long, 322 F.3d at 555. The record supports no other conclusion.
One has sympathy for Reynolds, who obviously is very bright, being a Michigan Law School Graduate,[11] but suffers from illnesses preventing her from using that intellect in the legal profession. We are, however, constrained by the Bankruptcy Code as enacted by Congress and by this court’s prior cases in determining whether Reynolds’s student loans constitute an undue hardship. Therefore, for the reasons stated above, I respectfully dissent.

. Judge Bright raises an issue in his concurrence regarding the equitableness of including Reynolds's husband's contributions and expenses to these totals. This issue was not raised or briefed on appeal; thus, the majority was correct in not considering it. United States v. Simmons, 964 F.2d 763, 111 (8th Cir.1992) ("As a general rule, an appellate court may review only the issues specifically raised and argued in an appellant's brief.”)

. Judge Bright suggests Reynolds’s monthly payment from her total student loan debt is *538 $910.55. This would be correct had all of her creditors appealed from the Bankruptcy Court’s discharge order. As the majority opinion correctly notes, however, two of her creditors did not appeal, thus Reynolds is no longer responsible for those debts, which account for $408.06 of Judge Bright's suggested monthly total payment.

. Grutter v. Bollinger, 539 U.S. 306, 312, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003) ("[Michigan] Law School ranks among the Nation's top law schools.”).