**In re Claude LEHMAN, Debtor.**

**Claude LEHMAN, Plaintiff,**

v.

**NEW YORK HIGHER EDUCATION SERVICES CORPORATION, Defendant.**

**Bankruptcy No. 96–10086FGC. Adversary No. 97–1009.**

United States Bankruptcy Court. D. Vermont.

July 9, 1998.

S.L. Baird, Burlington, VT, for Claude Lehman.

G.T. Faris, IV, Shelburne, VT, for New York State Higher Education Services Corporation.

**Amended Memorandum and Order Denying Debtor's Request for Discharge of Student Loans Pursuant to 11 U.S.C. § 523(a)(8)(B)**

FRANCIS G. CONRAD, Bankruptcy Judge.

Debtor Claude Lehman filed a complaint against Creditor New York State Higher Education Services Corporation seeking the discharge of his student loan debt. The issue before us is whether excepting the student loan debt from Chapter 7 discharge imposes an undue hardship on Debtor so as to warrant discharge under 11 U.S.C. § 523(a)(8)(B). The parties have cross-moved [1] for summary judgment [2] on the complaint. We find the student loan to be non-dischargeable because Debtor is unable to satisfy the criteria required for a determination of undue hardship. We deny Debtor's motion and grant summary judgment to Creditor.

### FACTUAL BACKGROUND

Debtor is well-educated. He attended Sarah Lawrence College in Bronxville, New

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to this Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(I). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bkrtcy.P. 7052.

2. The standards for summary judgment under Fed.R.Civ.P. 56, as made applicable by Fed. R.Bankr.P 7056, are well-established and free from controversy and therefore need not be set out here.

York from September 1982 to June 1986, where he earned a Bachelor of Arts in general liberal arts, with an emphasis in history and literature. Thereafter, Debtor attended Oxford University in England from September 1986 to June 1988, where he earned a Master's Degree in Russian Studies.

To manage the costs of both his undergraduate and graduate educations, Debtor obtained student loans from Citibank Corporation, guaranteed by Creditor, a governmental agency whose purpose is to insure or guarantee such loans. By the terms of the loan agreements, Debtor was to commence repayment six months after graduation, or December 1988. Upon Debtor's request, Creditor granted Debtor two repayment deferments because Debtor was then unemployed. As a result of such deferments, the loans first became due on April 1, 1990.[3]

Debtor has apparently had a difficult time finding his niche in life since receiving his diplomas. During the fall of 1988, Debtor moved to Burlington, Vermont. From January 1989 to September 1990, Debtor worked a variety of part-time jobs. Beginning in September 1990, Debtor was hired to teach English at Burlington High School. His salary that year was TWENTY–FIVE THOUSAND DOLLARS ($25,000). In September 1991, Debtor was transferred to Hunt Middle School in Burlington. His salary that year was TWENTY–EIGHT THOUSAND DOLLARS ($28,000).[4] Debtor is currently 34 years old. He is unmarried and has no dependents. He has no physical disability, illness or other condition that impedes him from employment.

In or about June 1992, Debtor terminated his position with the Burlington schools due to apparent work-related mental stress.

There was no documentation of this other than Debtor's testimony. Debtor has occasionally taught as an adjunct teacher at local colleges and has held other part-time employment since that time. In 1995, Debtor opened a pottery studio in Burlington. He sold approximately FOUR THOUSAND DOLLARS ($4,000) worth of pottery in 1996 and approximately SEVEN THOUSAND DOLLARS ($7,000) worth in 1997. Debtor continues today in his attempt to sculpt this pottery business into a dependable source of income and has estimated a THREE THOUSAND DOLLAR ($3,000) increase in business over the next year. He appears to be slowly shaping a career out of potting.

To date, Debtor has made no payments toward his student loan debt. Beginning in 1992, however, Debtor has, through counsel, contacted Creditor on numerous occasions to discuss the terms of the student loans and to arrange repayment of the debt. In 1995, Creditor, in an action in the Chittenden Superior Court, obtained judgment against Debtor in the amount of THIRTY–TWO THOUSAND SIX HUNDRED TWELVE AND 57/100 DOLLARS ($32,612.57), plus interest. On January 30, 1996, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. In that proceeding, Debtor indicated a monthly income for 1995 of SEVEN HUNDRED NINE AND 63/100 DOLLARS ($709.63) and monthly expenses of SIX HUNDRED DOLLARS ($600.00). On May 16, 1996, Debtor received his discharge. Thereafter, Creditor sought collection of the debt in question by, among other measures, providing notice of intention to offset against Debtor's federal tax refund. Debtor brought this action believing his debt is dischargeable under 11 U.S.C. § 523(a)(8)(A)[5] and (B).[6]

---

**3.** Debtor raises the issue that seven (7) years had passed since the loans became due and thus they are entitled to discharge. This is a non-issue in this case. It is clear from calculating the first due date, plus deferments, that the loans are still less than seven years old. See 11 U.S.C. § 523(a)(8)(A).

**4.** These are high salaries by Vermont standards in 1990 and 1991.

**5.** See footnote 3.

**6.** 11 U.S.C. § 523(a) provides:

A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt—(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—(B) excepting such debt from discharge

## DISCUSSION

The standard for discharging a student loan by "undue hardship," under § 523(a)(8)(B), requires satisfaction of the three-prong test developed in *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395 (2d Cir.1987). In *Brunner,* the Second Circuit held "undue hardship" will be found only upon a showing: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." 831 F.2d at 396. Debtor has the burden of demonstrating undue hardship under the discharge exception for student loans. *Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 301 (3d Cir.1995); *Woodcock v. Chemical Bank. NYSHESC* (In re Woodcock), 45 F.3d 363, 367 (10th Cir.1995), *cert. denied,* 516 U.S. 828, 116 S.Ct. 97, 133 L.Ed.2d 52 (1995). To overcome the nondischargeability of his student loan, Debtor must establish each prong of the *Brunner* test. For completeness, we discuss each in turn, even though Debtor fails the very first *Brunner* prong.

To satisfy the first prong, Debtor must show he is currently unable to maintain a minimal standard of living. Objectively, a person with income and expenses equal to Debtor's may be found to already be living at a minimal level. The imposition of repayment would surely force the sort of hardship Congress sought to avoid by this exception to nondischargeability. We do not, however, believe the same protection is so easily afforded to one intentionally living at Debtor's level. The difference lies in the distinction between one living at the minimal level of living and one living as a "minimalist." Although Debtor has been trained at reputable academic institutions, he seems to claim that, for reasons wholly out of his control, he cannot find steady work, and must, instead, mold clay for income. We have serious reservations about the validity of his claim. Perhaps he needs to bend life's clay head on in order to live. Construing the requirement, it does not suffice for the purpose of the first prong of the *Brunner* test that, currently, Debtor simply does not, by choice, have sufficient income to maintain a minimal standard of living and repay his debt. Voluntarily choosing a minimalist lifestyle does not satisfy the first *Brunner* prong.

To fulfill the second prong of the test, Debtor must demonstrate additional circumstances that this current insufficiency of income for repayment is likely to persist for a significant portion of the repayment period. Debtor must prove a "certainty of hopelessness, not simply a present inability to fulfill [his] financial commitment." *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir.1993), quoting *In re Briscoe,* 16 B.R. 128, 131 (Bankr. S.D.N.Y.1981). In this matter, Debtor has provided no additional circumstances that show his current state of affairs will persist. In fact, Debtor provided evidence to the contrary. Debtor has estimated for this next year an increase in business of nearly fifty percent over last year. Such income growth against Debtor's traditionally frugal lifestyle, coupled with the fact that Debtor has no dependents, indicates that his present inability to fulfill his financial commitment will not persist for a significant portion of the repayment period. Moreover, his appearance before us did not reveal any obvious physical or psychological problems that would prevent him from working over the loan repayment period. Accordingly, Debtor is unable to satisfy the second prong of the *Brunner* test.

We turn to the third prong of the test. Debtor must show he has made good faith efforts to repay the loan. Debtor's failure to properly repay must result from factors beyond his reasonable control. *In re Roberson,* 999 F.2d at 1136. Despite incomes as high as TWENTY–EIGHT THOUSAND DOLLARS ($28,000) per year, Debtor has failed to make a single payment to Creditor. We can imagine a situation where a debtor may be unable to make any payment

under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

to a creditor though still acting in good faith. By choice or not, Debtor has certainly had opportunities to repay some amount, yet did not. No factors beyond Debtor's reasonable control precluding repayment have been suggested. Instead, Debtor appears to have ignored his obligation. Such conduct cannot satisfy the good faith requirement of the *Brunner* test.

 Debtor, through counsel, argued that undue hardship can be demonstrated by satisfying the *Johnson* test. *In re Johnson*, 5 BCD 532 (Bkrtcy.E.D.Pa.1979). Debtor rightly noted that we previously applied the *Johnson* test to a matter of dischargeability of a student loan debt in *Lohman v. Connecticut Student Loan Foundation. Lohman v. Connecticut Student Loan Foundation (In re Lohman)*, 79 B.R. 576 (Bkrtcy.D.Vt.1987). This Court's decision in *Lohman*, however, came weeks before the Second Circuit Court of Appeals' ruling in *Brunner. Brunner* now represents the proper test for this Court in the dischargeability of student loans debts by undue hardship. Additionally, the Court of Appeals in every circuit has since followed the *Brunner* test in similar matters. "*Brunner* now provides the definitive, exclusive authority that bankruptcy courts must utilize to determine whether the 'undue hardship' exception applies." *Faish, supra,* 72 F.3d at 306. *Lohman* is no longer precedent in this district. Thus, we will not apply the *Johnson* test in light of the widely-adopted *Brunner* test.

Debtor fails to demonstrate the hardship Congress intended. The only evidence Debtor produced is that he is presently unable to repay his debt by choice. Such evidence is insufficient to discharge a student loan under § 523(a)(8)(B). "The hardship alleged ... must be undue and attributable to truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents." *TI Federal Credit Union v. DelBonis,* 72 F.3d 921, 927 (1st Cir.1995). For the reasons set forth above, Debtor has failed to meet his burden of proof.

## CONCLUSION

Debtor fails to satisfy the *Brunner* test. There exists, therefore, no grounds by which the student loans debt can be discharged. Accordingly, Debtor's motion for summary judgment is denied and Creditor's motion is granted.

IT IS SO ORDERED.