**In re Dale E. STANDFUSS and Mary L. Standfuss, Debtors.**

**Dale E. Standfuss and Mary L. Standfuss, Plaintiffs,**

v.

**United States Department of Education, Defendant.**

**Bankruptcy No. 99–20281–172.**
**Adversary No. 99–2018–172.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Feb. 16, 2000.

David A. Sosne, St. Louis, MO, Case Trustee.

Wesley D. Wedemeyer, Office of the United States Attorney, St. Louis, MO, for defendant.

Vicki A. Dempsey, Marcia L. Moellring, Hannibal, MO, for debtors/plaintiffs.

### MEMORANDUM

JAMES J. BARTA, Chief Judge.

The trial of this proceeding was conducted on December 16, 1999. At the conclusion of the presentation of the testimony and other evidence, the matter was submitted to the Court upon the record as a whole. This is a core proceeding pursuant to Section 157(b)(2)($l$) of Title 28 of the United States Code. The Court has jurisdiction over the parties pursuant to 28 U.S.C. §§ 151, 157, 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

This matter is before the Court on the complaint of Mr. Dale Standfuss and Mrs. Mary Standfuss ("Debtors") to obtain a discharge of student loans on the grounds of undue hardship pursuant to Section 523 of Title 11 of the United States Code

("Code"). For the reasons set forth below, the Court finds the Debtors have failed to demonstrate that holding this debt to be nondischargeable would impose an undue hardship pursuant to 11 U.S.C. § 523(a)(8).

## FACTUAL BACKGROUND

On or about April 24, 1996 the Debtors executed a promissory note for a Federal Direct Consolidation Loan under the Defendant's William D. Ford Federal Direct Loan Program. **Defendant's Exhibit A.** At about the same time, the Debtors entered into an Income Contingent Repayment Plan that allows for adjustment of the monthly payments based on a borrower's income. **Defendant's Exhibit B.** The 1996 note was a refinancing and consolidation of three student loans. The original loans dated back to the year 1980. The total amount owed under the Federal Direct Consolidation Loan, as of the date of the bankruptcy petition filing, was approximately $14,000.00. Prior to the execution of the consolidation loan agreement, the Debtors were individual obligors, liable only for the obligations owed on their separate debts. However, upon execution and pursuant to the terms of the Federal Direct Consolidation Loan agreement, the Debtors became co-debtors, jointly liable for all amounts owed. The Debtors' testimony at trial indicated that more than ninety-five percent of the amount owed under the consolidation loan represented the amount originally borrowed by Mrs. Standfuss.

Mr. Standfuss is 38 years old and is currently employed as a line worker and earns the bulk of the Debtors' income. Mrs. Standfuss was declared disabled as of April 28, 1992 and is unemployed. Debtors' dependents include a nineteen year old son, thirteen year old daughter, and a disabled six year old granddaughter.

## DISCUSSION

The Debtors have requested that this Court find that their student loan obligation be discharged pursuant to 11 U.S.C. § 523(a)(8) under the undue hardship provision of the Bankruptcy Code. Section 523(a)(8) provides:

> A discharge under § 727 ... of this title does not discharge an individual debtor from any debt for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. *See* 11 U.S.C. § 523(a)(8).

The term "undue hardship" is not defined in the Bankruptcy Code, therefore it is within the discretion of the court to determine whether or not the circumstances of a debtor's case warrant the discharge of a debtor's student loans. *See Andrews v. South Dakota Student Loan Assistance Corp., (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.1981); *Rose v. United States Department of Educ., (In re Rose)*, 215 B.R. 755, 763 (Bankr.W.D.Mo.1997). Although several tests have been developed to determine what constitutes undue hardship, the Bankruptcy Appellate Panel for the Eighth Circuit Court of Appeals, ("BAP"), recently held that the totality of circumstances test articulated by the Court of Appeals in *Andrews*, is "the test for undue hardship binding bankruptcy courts in the Eighth Circuit." *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 139, 140 (8th Cir. BAP 1999). The BAP interpreted the totality of the circumstances test of Andrews to require an analysis of: (1) the debtor's past, present, and reasonably reliable future financial resources, (2) calculation of the debtor's and his or her dependents' reasonable necessary living expenses, and (3) any other relevant facts and circumstances surrounding the particular bankruptcy case. *Andresen*, at 140. "The bankruptcy

court must determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139. *See In re Bagley,* 4 B.R. 248, 250–251 (Bankr.D.Ariz.1980); *In re Andrews,* 661 F.2d at 704 (8th Cir. 1981). The debtor bears the burden of proof to show the circumstances of his case are of a kind sufficient to constitute undue hardship and therefore warrant discharge pursuant to 11 U.S.C. § 523(a)(8). *See Zlotopolski v. Dressel (In re Dressel),* 212 B.R. 611 (Bankr.E.D.Mo.1997).

## I. Debtor's Past, Present, and Future Financial Resources

The Debtors' Bankruptcy Schedules I and J, filed on July 6, 1999, and the Debtors' testimony at trial demonstrate a net income of approximately $1,874.00 per month. **Plaintiffs' Exhibit 3.** The Debtors' present financial resources include Mr. Standfuss' wages from employment, Mrs. Standfuss' disability income, and Supplemental Security Income for their granddaughter. For at least the past three years the Debtors have also received income in the form of advance Earned Income Credit payments and federal income tax refunds. Neither the Earned Income Credit nor the tax refund were included in the calculation of income presented on the Debtors' bankruptcy schedules.

Mr. Standfuss earns approximately $1,300.00 gross wages per month. After the appropriate deductions are made for pre-tax spending accounts, taxes and union dues, Mr. Standfuss earns approximately $1,094.00 net income per month. Mr. Standfuss has been employed as a line worker at his present place of business for the past six months. He does not anticipate a significant increase in salary in the foreseeable future. However, there is no evidence on the record to suggest that Mr. Standfuss' current employment and income will not continue.

In addition to a debtor's wages, it is also appropriate to consider "any unearned income or other wealth the debtor is expected to receive." *See In re Andrews,* 661 F.2d 702, 704. Comprising the Debtors' "other wealth" is the monthly disability income and the Earned Income Credit and tax refund expected for the year ending 1999.

The Debtors receive $280.00 Supplemental Security Income per month from the Social Security Administration for Mrs. Standfuss' disability and $500.00 per month for their granddaughter's disability. Mrs. Standfuss has been receiving disability income since 1992 and there is no evidence to suggest that these payments will not continue in the future. It is also likely that the Debtors will continue receiving disability income for their granddaughter, while the granddaughter remains in their care.

A review of the Debtors' Federal Income Tax returns for the 1996, 1997 and 1998 tax years indicates that the Debtors were to receive a combination of Earned Income Credit and tax refunds for each year.

| Year | Advance EIC | Total EIC | Tax Refund |
|------|-------------|-----------|------------|
| 1996 | $1,100.00 | $3,479.00 | $2,376.00 |
| 1997 | $1,256.00 | $3,510.00 | $2,260.00 |
| 1998 | $ 984.00 | $3,756.00 | $2,806.00 |

The 1996 refund amount apparently reflects a calculation error on the Debtors' return.

In 1996, the tax refund represented the full amount of the Earned Income Credit, because no taxes were withheld. In 1997 and 1998, the tax refunds included the full amount of the Earned Income Credit, plus refunds in the amount of $6.00 and $34.00 respectively. A review of Mr. Standfuss' weekly paycheck receipts, (stating weekly and year-to-date earnings), for the weeks ending October 30, 1999, November 6, 1999, November 13, 1999, and November 20, 1999, suggests that the Debtors will qualify for advance Earned Income Credit

and a tax refund for the year 1999 as well. **Plaintiffs' Exhibit 2.**

The Debtors testified that they have never received the full amount of their Earned Income Credit ("EIC"). After a review of the Debtors' Schedules, it appears that an unspecified amount of the EIC/tax refund may have been paid to a State agency under the tax intercept provision of the Internal Revenue Code and the Social Security Act. *See Sorenson v. Secretary of Treasury of the United States,* 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986). However, the Court finds that, for purposes of this consideration, the Debtors received and will continue to receive substantially all of the Earned Income Credit reported on their joint federal income tax return.

Based on the evidence and testimony at trial, the Debtors' net household income for the year ending 1999 will total approximately $22,488.00 excluding any amounts the Debtor's may receive for the Earned Income Credit and tax refund. If the Earned Income Credit and tax refund were included, the Debtors' projected annual income will increase by nearly one third.

## II. Necessary Reasonable Living Expenses

The Debtors' Bankruptcy Schedules I and J, filed on July 6, 1999 demonstrate a monthly net income of $1,874.00 and monthly living expenses of $1,900.00, a deficit of $26.00. **Plaintiff's Exhibit 3.** However, Mrs. Standfuss testified at trial that two of the expenses listed on the schedule had been eliminated and the Debtors' monthly expenses currently total $1,791.00, leaving a cushion of $83.00 per month. The living expenses listed by the Debtors for a family of five were:

| | |
|---|---|
| Rent or Home Mortgage Payment | $350.00 |
| Electricity and Heating Fuel | $200.00 |
| Water and Sewer | $60.00 |
| Food | $500.00 |
| Clothing | $100.00 |
| Laundry and Dry Cleaning | $100.00 |
| Medical and Dental Expenses | $100.00 |
| Transportation (not including car payments) | $225.00 |
| Recreation, clubs, entertainment, newspaper, magazines, etc. | $100.00 |
| Auto Insurance | $50.00 |

The Court finds that except as noted below, the above listed basic living expenses are not unreasonable or unnecessary. The expense schedule demonstrates the Debtors' attempt to live frugally. The amounts apportioned to food, rent, clothing, transportation, etc. do not appear to be excessive for a family of five. Furthermore the Debtors have attempted to minimize their expenses by discontinuing their cable television and telephone service.

The only expense that appears to be excessive and not in accord with the reasonable and necessary expense requirement is the entertainment expense. If the Debtors reduced the amount allotted for entertainment expenses by twenty-five percent of the present amount, the amount of uncommitted funds would be increased by an additional $25.00. Even if the entertainment expense is not modified, the Debtors have a cushion of $83.00 per month, not including the annual income received under the Earned Income Credit provisions and the potential tax refund. For the above stated reasons, the evidence and testimony regarding the Debtors' anticipated future income and expenses, support a finding that the Debtors are able to make *some* payment on their student loan without imposing an undue hardship on the Debtors and the Debtors' dependents.

## III. Other Relevant Facts and Circumstances

After examining the reliable future income and necessary expenses of the Debtors, the Court is required to consider any other relevant facts and circumstances of the Debtors' case that may affect, negatively or positively, the Debtors' income and expenses.

The Debtors' have purported that Mrs. Standfuss' disability will have a negative effect on the Debtors' income over time. To support the Debtors' contention, Mrs. Standfuss testified that the debilitating nature of her disability renders her unable to

work. Although there was no evidence to contradict this testimony, there was also no evidence that corroborated the severity of the disability. Even had such corroboration been admitted at trial, the Court finds that there is ample support in the record to find that the Debtors are able to maintain at least a minimal standard of living and make some payments on their education loans, even while Mrs. Standfuss is unemployed. The Court notes that Mrs. Standfuss has been disabled since 1992 and has been unemployed for at least the past year. The Court also notes the calculation of income and expenses discussed in Parts I and II above, did not anticipate any income from Mrs. Standfuss other than her disability income. Finally, the Court finds that even if Mrs. Standfuss is unable to work, there is evidence on the record that she may not be maximizing the amount of income she is entitled to receive. Mrs. Standfuss acknowledged that she was eligible to receive more disability income per month, but had failed to follow through with the application for such income. For the above stated reasons, the Court finds that in the present circumstances, the record does not support the Debtors' contention that Mrs. Standfuss' disability will negatively effect their future income.

Although it is unlikely that the Debtors' income will increase substantially over the repayment period of the loan, the evidence and testimony support a finding that the Debtors' expenses will decrease in the future. Two the Debtors' dependents will reach the age of majority within five years. Based on the Defendant's representations that the repayment period for the loan is twenty-five years, and considering the flexibility of the Income Contingent Repayment Plan selected by the Debtors, the absence of the dependents' expenses in the next five years will have a positive effect on the Debtors' ability to repay their loan.

The Court has also considered the equity of imposing the determination of non-dischargeability on Mr. Standfuss, notwithstanding the representation that substantially all of the consolidated loan balance represents student loans to Mrs. Standfuss. The Debtors' joint obligation to repay both student loan debts was the result of the Federal Direct Consolidation Loan agreement that had been entered into after a default. Thereafter, the Debtors requested and were granted a general forbearance for several periods prior to the commencement of this case. There is nothing in the record to suggest that the consolidation that resulted in the joint obligation was involuntary or without the Debtors' understanding of the process.

The Court has carefully considered the totality of circumstances of the Debtors' case, and concludes the record supports a finding that the Debtors are able to make some payment on their student loans and maintain a minimal standard of living for themselves and their dependents.

By a separate Order, judgment will be entered in favor of the Defendant.