# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 00-6007WM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Julie Ann Cline, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Julie Ann Cline, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | Western District of Missouri |
| | * | |
| Illinois Student Loan | * | |
| Assistance Association, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: March 21, 2000
Filed: May 15, 2000

_____

Before KRESSEL, SCHERMER, and SCOTT, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge.

The debtor, Julie Ann Cline, filed an adversary proceeding against the Illinois Student Loan Assistance Association seeking a determination that excepting her student loan obligations to ISLAA from her Chapter 7 discharge would constitute an undue hardship pursuant to 11 U.S.C. § 523(a)(8). The

bankruptcy court[1] found that Cline's student loan debt was discharged on the basis of undue hardship. ISLAA appeals. Because the findings of the bankruptcy court are not clearly erroneous, we affirm.

## BACKGROUND

Cline is thirty-five years old and single with no dependents. She holds a bachelor's degree in psychology and sociology from Southwest Bible College and a master's degree in sociology from Central Missouri State University. Cline financed her education with student loans, which she consolidated after earning her master's degree. The balance due ISLAA on the consolidated student loan exceeds $53,522. Over the course of a decade, Cline has made two payments.

ISLAA offers a variety of repayment plans. Under the standard repayment plan, Cline's obligation is payable over ten years in monthly installments of $613. Under the extended plan, the loans are payable over twelve to thirty years in monthly installments of $394. Under the graduated plan, Cline's monthly payments would begin at $344 with periodic increases over a repayment term of twelve to thirty years. Finally, under the income contingent plan, Cline's monthly payments would be $283 for thirty-five years.

Although Cline is highly educated and works in her field as a caseworker for the Missouri Department of Family Services, her income has been modest. In 1999, she earned approximately $25,000. In 1998 and 1997, Cline earned approximately $24,000. In 1996, her annual income was approximately $22,500.

Cline's duties consist of assisting people seeking food stamps and medical and other forms of public assistance with the application process. Three times Cline succeeded in obtaining a higher responsibility and slightly higher pay position but in each instance she lasted only a few months in the new job and voluntarily returned to her caseworker position. According to Cline, the other positions involved more stress than she could handle. Apparently Cline cannot manage responsibilities in excess of simple, repetitive tasks.

Cline filed her petition for relief under Chapter 7 on May 21, 1999. In her schedules and statement of financial affairs she listed net monthly income of $1,424 and total monthly expenses of $1,433. In fact,

---

[1] The Honorable Arthur B. Federman, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

her net monthly income is $1,578, and she sometimes has an opportunity to work overtime that could net from as little as $65 to as much as $284 extra in a given month.

In her bankruptcy schedules, Cline listed expenses that the court properly found were modest and reasonable. Her monthly expenses included rent of $465, food including special dietary items of $200, $20 for medical and dental expenses, $73 for car insurance, up to $130 for car use and maintenance, $50 for recreation, $30 for cable television, $25 for charitable contributions, and a $50 payment on a nondischargeable state tax obligation. Cline's schedules also included a $250 monthly car payment. However, she has since paid off the loan on the car. The court found that, nevertheless, Cline would require that $250 each month in maintenance of her car and eventually payments on a new car.

## DISCUSSION

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. Johnson v. Border State Bank (In re Johnson), 230 B.R. 608, 609 (B.A.P. 8th Cir. 1999); Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 525 (8th Cir. 1998). The determination that requiring a debtor to repay student loans would constitute an undue hardship is a factual finding and is reversible only for clear error. See Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 128 (B.A.P. 8th Cir. 1999).

Section 523(a)(8) of the Bankruptcy Code provides:
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
      (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

Undue hardship is not defined by the Code. In the Eighth Circuit, the test for undue hardship is the totality of the circumstances, with particular attention to the debtor's current and future financial resources,

3

necessary reasonable living expenses for the debtor and the debtor's dependents, and any other facts unique to the particular bankruptcy case. See Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981); *see also* Andresen, 232 B.R. at 139-40.

Admittedly, this is a case that could be determined either way. There are several factors that would support a determination that Cline could manage to repay her student loans, albeit with an extraordinary effort but perhaps not crossing the threshold of undue hardship. Cline is a healthy thirty-five year old person with no dependents. She is highly educated and has worked in the field of her bachelor and master degrees for twelve years. She has modest expenses, and a monthly surplus of perhaps as much as $328.

On the other hand, there is no shortage of circumstances that also support the bankruptcy court's finding that requiring Cline to repay her student loans would constitute an undue hardship. While Cline's trained profession is social work, as a case worker for the state department of social services, she has never earned more than $25,000 in one year. She has never been able to afford her student loan payments. She has only made two payments in a ten year period.

She also has a $2000 nondischargeable tax debt payable at $50 a month, and she will eventually require a new car. Moreover, even under the smallest payment plan, Cline would expend virtually all of her already questionable surplus for thirty-five years to finally repay her student loans. She would be seventy years old when her loans are paid, assuming she makes the payments as scheduled, and encounters no other financial or health problems.

Cline lives very modestly. She rents a unit in a duplex from her father for $465 per month and her other expenses are minimal. Not including a car payment that the bankruptcy court found would eventually be a required expense, her minimal monthly expenses are approximately $1258. Her take home pay is $1578, admittedly $154 more than the bankruptcy court found. While Cline has earned overtime, there was no evidence that overtime was either always available or mandatory, and no assurance that Cline could handle continuous overtime.

The bankruptcy court determined that Cline could endure only work that was essentially ministerial and that she suffered from the stress of increased responsibility due to a lack of self-confidence. While there was no evidence that the debtor was clinically disabled or maladjusted, the bankruptcy court expressly found that Cline was not fit for the higher responsibility and higher paying positions she tried and

4

then left. There is no reason to view the trial court's findings as unreliable merely because no expert evidence was introduced. The record offers no reason to suggest that the bankruptcy court made its decision without due consideration. The bankruptcy court took evidence, judged the debtor's credibility, and applied the proper totality of the circumstances test. Its finding of undue hardship is not clearly erroneous.

It is not our place to re-evaluate the evidence, especially when the proper legal test was applied. In this case, the bankruptcy judge properly cited and applied the totality of the circumstances test for undue hardship set forth by the Eighth Circuit in Andrews, and in our recent opinion in Andresen. The bankruptcy court carefully analyzed the debtor's current and future financial resources, reasonable living expenses, and any other relevant facts or circumstances. It was in a position to determine Cline's credibility, and its' conclusion is not unsupported by the record.[2]

In a case like this that could be construed either way, we are not at liberty to second guess the bankruptcy court's findings. We are to look for clear error only, and there is nothing clearly erroneous about the court's ruling in this case.

While the court appears to have underestimated Cline's monthly income by $154, it is of no moment because the bankruptcy court did not rely exclusively on Cline's limited income earning capacity, and because her expenses are probably underestimated. The court expressly decided that Cline's lack of self-confidence was the reason that she could not maintain higher paying employment. Indeed, the transcript of the proceedings suggests a tearful and at times shameful debtor. The court did not let Cline win an undue hardship discharge because she voluntarily limited her earning capacity. Instead, the court found that the Cline was *unable* to maintain a job that paid a higher income.

In addition, the court's determination of undue hardship would survive clear error review even without the element of the Cline's fragile resistance to stressful work because her financial situation alone is highly precarious. An inevitable future car payment, the tax debt payments, and the fact that her expenses were already estimated minimally render what appears to be a $320 monthly surplus more likely

---

[2] See Anderson v. City of Bessemer, 470 U.S. 564, 575 (1985) (holding that only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what was said).

to be barely enough to make ends meet.  The bankruptcy court's conclusion that Cline will never be able to afford payments on her student loans, not even at $283 a month spread out over thirty-five years on the income contingent repayment plan, is not clearly erroneous.  She has never been able to afford the payments, and even if her income increases slightly over the years, so will her expenses, and she will likely not be able to afford the payments in the future either.

Finally, going over Cline's expenses dollar for dollar in order to find every possible way to boost a surplus is not reasonable given that the overall total remains firmly minimal.  There are no luxuries to reduce in this case; it cannot be clear error for the bankruptcy court to have failed to require the debtor to abandon $25 a month in charitable donations or to obtain a roommate to share expenses with her for the next thirty-five years.

CONCLUSION

The judgment of the bankruptcy court determining that the debtor's debt to the defendant is not excepted from her discharge is affirmed.

SCHERMER, Bankruptcy Judge dissenting

STANDARD OF REVIEW

The majority correctly states that determination of undue hardship is a factual determination and is reversible only for clear error.  Andresen v. Neb. Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 128 (B.A.P. 8th Cir. 1999).  I believe the majority incorrectly applies the clearly erroneous standard and, therefore, I respectfully dissent.

DISCUSSION

Pursuant to Section 523(a)(8) of the Bankruptcy Code, a student loan obligation is excepted from discharge "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. ¶ 523(a)(8).  The debtor bears the burden of proving undue hardship by a preponderance of the evidence.  Woodcock v. Chemical Bank, NYSHESC (In re Woodcock), 45 F.3d 363 (10th Cir. 1995); Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews), 661 F.2d

702, 704 (8th Cir. 1981); Standfuss v. U.S. Dept. of Educ. (In re Standfuss), 245 B.R. 356, 359 (Bankr. E.D. Mo. 2000); Kopf v. U.S. Dept. of Educ. (In re Kopf), 2000 WL 249245, *2 (Bankr. D. Me. 2000), citing Grogan v. Garner, 498 U.S. 279, 287 (1991); Clark v. U.S. Student Aid Funds, Inc., 240 B.R. 758, 761 (Bankr. W.D. Mo. 1999).

Congress' intent in excepting student loans from discharge was clear: Congress wanted to prevent the "undeserving student borrower from abusing the bankruptcy process." Andresen v. Neb. Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 130 (B.A.P. 8th Cir. 1999). Congress did not, however, define undue hardship. As the majority correctly points out, in the Eighth Circuit, the test for undue hardship requires an inquiry into the totality of circumstances with special attention to the debtor's current and future financial resources, the necessary reasonable living expenses for the debtor and the debtor's dependents, and any other circumstances unique to the particular bankruptcy case. Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981); Andresen v. Neb. Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 139-40 (B.A.P. 8th Cir. 1999).

The Appellant argues that the bankruptcy court erred in applying the totality of circumstances test to the Debtor's situation and in determining that excepting the loan from discharge would impose an undue hardship on the Debtor. I agree with the Appellant.

## I. The Debtor's Current and Future Financial Resources

The bankruptcy court erred when it found the Debtor's gross monthly income to be $1,979.00 and her monthly take home pay to be $1,424.88. At trial, the Debtor introduced into evidence her pay stub for regular pay for September, 1999, and her pay stubs for overtime pay for September, October, and November, 1999. (Pl.'s Ex. 6.) Her regular pay stub clearly indicates that her gross pay for September, 1999, was $2,078.00 and that her net pay was $1,578.08. Furthermore, her overtime pay stubs indicate gross and net overtime pay for September, 1999, of $83.92 and $76.66, respectively, gross and net overtime pay for October, 1999, of $71.93 and $65.71, and gross and net overtime pay for November, 1999, of $311.70 and $284.73. The Debtor earned on average $142.35 net overtime pay for each month for which evidence was provided. No testimony was presented to contradict these amounts. When the average net overtime pay is added to the Debtor's regular monthly net pay, her total monthly take home pay is $1,720.43. The bankruptcy court understated the Debtor's monthly net pay by $295.55. This additional monthly income is sufficient to enable the Debtor to repay her student loan obligation to Appellant

at the rate of $283 per month under the income contingent repayment plan offered by the Appellant. The bankruptcy court's failure to consider the Debtor's take home pay as evidenced by her pay stubs – the most accurate evidence of her current rate of pay – is clear error mandating reversal.

Furthermore, when determining the Debtor's current and future financial resources, the bankruptcy court did not take into account the fact that the Debtor has voluntarily chosen to minimize her income. The Debtor cannot voluntarily reduce her income and then seek a discharge of her student loan debt as an undue hardship. U.S. Dept. of Educ. v. Rose (In re Rose), 227 B.R. 518, 525 (W.D. Mo. 1998); Healey v. Mass. Higher Educ. (In re Healey), 161 B.R. 389, 394-95 (E.D. Mich. 1993);[3] Lehman v. N.Y. Higher Educ. Serv. Corp., 226 B.R. 805, 808 (Bankr. D. Vt. 1998). The majority determines that the bankruptcy court properly found that the Debtor was unable to maintain a job that paid more than her present job and therefore concludes that the Debtor did not voluntarily limit her income. I disagree. The Debtor clearly voluntarily left several jobs which paid more than her current job.[4] In addition, the majority fails to address

---

[3]The Healey court applied the Brunner totality of circumstances test, under which it mechanically tested the debtor's economic situation to determine if the debtor could repay her student loan obligations. The court concluded that the debtor had failed to maximize her income and therefore would not be discharged from her student loan obligations as an undue hardship. The Eighth Circuit Bankruptcy Appellate Panel has noted that the "Brunner test and the Andrews test are similar, with the controlling [in the Eighth Circuit] Andrews test simply allowing a broader consideration of the case and any factors specific to a given debtor's particular situation." Andresen v. Neb. Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 140 (B.A.P. 8th Cir. 1999). In light of this instruction, it is appropriate for this court to seek guidance from other courts' application of the economic prong of the Brunner test in evaluating the debtor's financial resources and necessary reasonable living expenses under the Andrews test.

[4]On a number of occasions the Debtor attempted employment with greater responsibility and greater pay than her present position. For example, she took a position as an efficiency case manager for DFS for approximately four months, she took a position with the disability determinations department for approximately nine months, and she took a position at a drug rehabilitation center. The position as the efficiency case manager paid $100 to $200 per month more than her present position. In each instance, the Debtor voluntarily left the alternate employment to return to her present position as a case manager. According to the Debtor, the alternate positions she attempted were "too high stress for [her]," yet she has never been diagnosed with a learning disability or other medical condition which impacts her ability to perform a job. (Tr. at 17-18.) The Debtor is uncomfortable in a job other than one requiring simple repetitive tasks, (Tr. at 18.), and therefore has voluntarily left several jobs which did not fall within her self-imposed comfort level.

the fact that the Debtor has taken no other steps to increase her income, such as obtaining a second job of a menial nature which would fit within her self-imposed comfort level. The Debtor has no dependents and the record reflects no other factors which would prevent her from obtaining additional employment to supplement her income. Alternatively, the Debtor has not sought employment in any other fields for which her skills are suited and which might pay more.

The Debtor bears the burden of proving undue hardship. The bankruptcy court erred when it equated the Debtor's present voluntarily limited income with the Debtor's present and future financial resources without holding the Debtor accountable for the available options for an individual with the Debtor's educational background and job skills to increase her income even if she continues to limit herself to jobs within her self-imposed comfort level.

## II. The Debtor's Necessary Reasonable Living Expenses

The majority determines that the Debtor lives very modestly. The bankruptcy court found that the Debtor's monthly expenses as listed on her schedules and as supplemented by her testimony are "both modest and reasonable." (Mem. Op. at 7.) While the Debtor's expenses may be modest, they must be considered in relation to her income and her student loan obligation. The bankruptcy court erred when it determined that the Debtor would suffer an undue hardship if required to repay her student loan to Appellant in light of her monthly income and expenses. The Debtor listed monthly expenses of $1,424.88 on her bankruptcy schedule of current expenditures. Her schedules differed from her testimony, however. She testified to monthly expenses which aggregate $971.50. Such testimony included $100 per month for food plus an unknown amount for a special diet. In contrast, she listed monthly food costs in her schedule at $200. Additionally, her testimony did not address her scheduled expenses of $20 for medical and dental expenses, $73 for automobile insurance, $50 for recreation, and $25 for charitable contributions. When these scheduled expenses as well as the additional $100 scheduled monthly food cost are added to the aggregate monthly expenses about which she testified, her monthly expenses total $1,259.50.

The Debtor testified that she has made an offer to repay nondischargeable taxes owed to the Internal Revenue Service and to the State of Missouri at the rate of $50 per month each. When these payments are added, her monthly expenses total $1,359.50. The Debtor's net monthly income of $1,720.43 exceeds her total monthly expenses, including her projected payments for the nondischargeable

tax liability, by $360.93 which is more that enough to fund payments under the income contingent repayment plan offered by Appellant.

The bankruptcy court noted that the Debtor no longer had a monthly car payment of $250 as included in her scheduled expenses because she had paid off the car loan, yet determined that an "allowance of $250.00 per month for maintenance and/or payments is reasonable." (Mem. Op. at 7-8.) The Court's allowance of $250 per month did not recognize that the Debtor included in her testimony expenses of $130 per month for maintenance, gas, and oil.[5] (Tr. at 8.) If we assume the bankruptcy court was correct in determining that $250 per month is a reasonable amount to spend for a car payment and/or maintenance, the Debtor has already testified to and been given credit for $130 per month for gas and regular maintenance. If we add an additional $120 per month to her aggregate monthly expenses (the difference between what she testified to as her actual expenses and what the court deemed reasonable), her monthly expenses aggregate $1,479.50. When this amount is subtracted from the Debtor's net monthly pay of $1,720.43, she has a monthly surplus of $240 which could be used to repay her student loan obligation.[6]

While the Debtor's monthly surplus under this analysis is $42 shy of the $283 needed to make payments under the income contingent repayment program, this analysis has not taken into consideration the reasonableness of monthly expenses of $30 for cable, $50 for recreation, and $25 for charitable contributions, which if eliminated from her budget would provide the Debtor with additional surplus of $105 per month. Such surplus is more than sufficient to fund repayment of Debtor's student loan obligation to

---

[5]These costs do not include the $11 per month she spends on personal property taxes, the $2.50 per month cost of maintaining her drivers license, nor the $73 per month she pays for automobile insurance. If these costs are added to the permitted $250 for car payment and/or maintenance, her actual monthly expenses related to her vehicle total $336.50.

[6]See Kopf v. U.S. Dept. of Educ. (In re Kopf), 2000 WL 249245 (Bankr. D. Me. 2000). In Kopf, the court refused to discharge the debtor's scheduled student loan obligation of $14,761.82 where the debtor's monthly income exceeded her monthly expenses by $66. The court noted that the debtor's budget did not include any car payment, that she pays $80 per month for transportation expenses and $26 per month for insurance, that her car has 170,000 miles on it, and that the debtor anticipates additional transportation expenses in the near future, given the age and wear and tear on the vehicle. Nonetheless, the court refused to discharge the debt nor did it give the debtor any credit in her budget for a car payment which would undoubtedly be needed in the near future.

Appellant under the income contingent option, leaving the Debtor $63 per month discretionary income to spend as she sees fit.

The intent here is not to dictate how the Debtor should spend her money; however, I must note that she bears the burden of proving undue hardship. The bankruptcy court erred when it concluded that the Debtor met that burden. The Debtor failed to demonstrate that her necessary reasonable living expenses are such that she will face an undue hardship if required to repay her student loan.

### III. Other Circumstances Unique to Debtor's Bankruptcy Case

The bankruptcy court found that the Debtor "appears to be uncomfortable with any position where her tasks are anything other than repetitive and ministerial," (Mem. Op. at 3), and concluded that the Debtor is "totally lacking in self-confidence." (Mem. Op. at 7-8.) The bankruptcy court found that each time the Debtor attempted a job which involved discretion or decision making responsibilities, she was "unable to adequately perform such tasks." (Mem. Op. at 3-4.) Nowhere does the record indicate that the Debtor was unable to perform any of the higher-paying jobs she attempted. She was never fired or asked to leave any of these jobs. To the contrary, she left each job of her own accord. Undoubtedly the bankruptcy court was correct in determining that the Debtor lacks self-confidence; I do not dispute that finding nor do I question the trial court's determination that the witness was credible. However, a lack of self-confidence does not constitute a unique circumstance which contributes to or establishes undue hardship under Section 523(a)(8) of the Bankruptcy Code. Lehman v. N.Y. Higher Educ. Serv. Corp., 226 B.R. 805, 808 (Bankr. D. Vt. 1998)(healthy, unmarried thirty-four year old with no dependents was not entitled to an undue hardship discharge based on his testimony that he terminated a job due to "apparent work-related mental stress").

The bankruptcy court noted that under the income contingent repayment program offered by Appellant, the Debtor would have to make payments for in excess of thirty-five years to pay off her student loan. The majority points out that the Debtor would be seventy years old when she pays off her loan under this alternative.[7] The Debtor opted to invest in an education. Yes, she will be paying for that education

---

[7]The majority notes that the Debtor has made only two payments toward her student loan obligation in ten years. Had she made payments when they became due, or even partial payments, the repayment period would be substantially shorter. The Debtor cannot create an undue hardship by

11

for a long time; however, she will have the benefit of that education for her entire lifetime. It appears that the only hardship in this case is the length of repayment; however, the length of repayment does not establish undue hardship. See, e.g. Kopf v. U.S. Dept. of Educ. (In re Kopf), 2000 WL 249245 (Bankr. D. Me. 2000).[8]

The bankruptcy court also noted that the Debtor "obtained an education that was not worthwhile to her financially." (Mem. Op. at 9.) The court should not consider the debtor's choice of education in deciding whether to discharge a loan. The risk of marketability of the student's selected education should be borne by the student, not the lender. Otherwise, lenders might be forced to limit education loans to the pursuit of what the lender perceives as marketable degrees and "students might find it impossible to get student loans to study art history or philosophy." Melton v. N.Y. State Higher Educ. Serv. Corp. (In re Melton), 187 B.R. 98, 104 (Bankr. W.D.N.Y. 1995). Furthermore, this is not the case of an individual who borrowed money to attend an unaccredited trade school. The Debtor earned an undergraduate degree from an accredited college and a postgraduate degree from an accredited university.

The "other circumstances" which courts have generally recognized in determining undue hardship are budgetary constraints which are beyond the debtor's control and which usually result from physical or mental disability of the debtor or the debtor's dependents. See, e.g., Andrews v. S.D. Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981); Andresen v. Neb. Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 139-40 (B.A.P. 8th Cir. 1999). The Debtor is a healthy thirty-four year old with no dependents. Healey v. Mass. Higher Educ. (In re Healey), 161 B.R. 389, 391(E.D. Mich. 1993)(undue hardship discharge denied for healthy, unmarried twenty-eight year old with no dependents); Lehman v. N.Y. Higher Educ. Serv. Corp., 226 B.R. 805, 808 (Bankr. D. Vt.

---

failing to make payments for ten years and then complain that the repayment period is too long.

[8]In Kopf, the court refused to discharge the debtor's scheduled student loan obligation of $14,761.82 where the debtor's monthly income exceeded her monthly expenses by $66. The student loan creditor's policies permit the debtor to apply for an amended decelerated repayment schedule based on monthly income and expenses. Under the plan, if the debtor were unable to make monthly payments, her payment would be set at zero. While the Kopf record does not reflect the rate at which interest accrues on the $14,716.82 loan balance, it is clear that with a monthly payment ranging from zero (the minimum payment) to $66 (the amount of debtor's budget surplus), the debtor would not be able to retire the student loan indebtedness for an extended period of time, if ever. Nonetheless, the Kopf court refused to discharge the loan as an undue hardship.

1998)(undue hardship discharge denied for healthy, unmarried thirty-four year old with no dependents). She has failed to establish any unique circumstances which would justify the discharge of her student loan obligation to Appellant.

## CONCLUSION

The majority notes that it is not the place of the appellate court to re-evaluate the evidence. This is true. The appellate court's role is not to second guess the trial judge but rather to review the record to determine if the evidence supports the trial court's conclusions.

The majority concludes that the bankruptcy court properly cited and applied the totality of circumstances test for undue hardship. While I agree that the bankruptcy court cited the proper test for undue hardship, I disagree with the majority's conclusion that the bankruptcy court properly applied that test. It is the role of the appellate court to determine whether the evidence supports the trial court's conclusion. Where clear error exists, the appellate court must reverse the trial court. I conclude that the evidence does not support a finding of undue hardship, that the Debtor has failed to meet her burden of establishing undue hardship under Section 523(a)(8) of the Bankruptcy Code, and that the bankruptcy court clearly erred when it determined that the Debtor's student loan obligation to Appellant should not be excepted from discharge because to do so would impose an undue hardship. Accordingly, I would reverse the order of the bankruptcy court.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT

13